**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

In re:

Kenyatta Tyler

    Debtor

_____/

Short Term Financial, L.L.C., dba AmeriCash Loans,

    Plaintiff,

v.

Kenyatta Tyler

    Defendant.

_____/

Chapter 7

Bankruptcy Case No. 15-23603

Adversary No.

## COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF INDEBTEDNESS

Plaintiff, Short Term Financial, L.L.C., dba AmeriCash Loans ("Plaintiff"), brings this complaint against Defendant, Kenyatta Tyler ("Defendant"), for a determination that the consumer loan ("Loan") she obtained from Plaintiff thirteen (13) days prior to the filing of her Chapter 7 bankruptcy petition is non-dischargeable pursuant to Section 523(a)(2)(A) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

### STATUTORY PREDICATE FOR RELIEF, PARTIES, JURISDICTION AND VENUE

1. This adversary proceeding is brought pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

2. Plaintiff is a Delaware limited liability company licensed to do business in the State of Illinois with all fees and licenses paid and otherwise is entitled to bring this action.

3. On April 10, 2015 (the "Petition Date"), Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code.

4. The Court has jurisdiction under 28 U.S.C. § 1334.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1409 (a).

### CAUSE OF ACTION FOR FRAUD, MISREPRESENTATION AND FALSE PRETENSES

7. On March 28, 2015, Defendant applied for and entered into a consumer loan agreement in the amount of $800.00 with Plaintiff (the "Agreement"), the last three digits of which were 219. A copy of the Agreement is attached hereto and made apart hereof as Exhibit "1".

8. Because Plaintiff permitted Defendant to obtain the Loan, Plaintiff believes and therefore alleges that it followed its customary procedures before extending loans to new customers.

9. Upon information and belief, the Loan was incurred for consumer debt as defined by Section 101(8) of the Bankruptcy Code.

10. On March 28, 2015, Plaintiff directly provided Defendant with $800.00 pursuant to the Agreement.

11. By entering into the Agreement with Plaintiff, Defendant agreed to repay the Loan under the terms provided in the Agreement.

Standards for Non-Dischargeability

12. To obtain a determination under section 523(a)(2) of the Bankruptcy Code that a debt is non-dischargeable, the plaintiff must show that (a) the defendant made representations to the plaintiff, (b) the defendant knew the representations were false, (c) the defendant made the misrepresentations with the intention of deceiving the plaintiff, (d) the plaintiff justifiably relied on such representations and (e) the plaintiff sustained a loss as the proximate result of the

defendant's conduct. *See, e.g., Grogan v. Garner,* 498 U.S. 279, 287-288, 111 S.Ct. 654, 659-660 (1991). *See also Field v. Mans*, 116 S.Ct. 437 (1995); *Citibank v. Eashai*, 87 F.3d 1082, 1092 (9th Cir. 1996); *In re Hostetter,* 320 B.R. 674, 681 (Bankr. N.D.Ind. 2005); *in re Briese,* 196 B.R. 440, 446 (Bankr. W.D.S.Wis 1996); see also *Mayer v. Spanel Intern Ltd.*, 51 F.3d 670, 673 (7th Cir. 1995).

<u>Defendant's Representations</u>

13. By applying for the Loan, entering into the Agreement and accepting the Loan, Defendant represented that she would repay the Loan in accordance with the terms and conditions of the Agreement (the "Representations").

14. Defendant intended for Plaintiff to rely on the Representations.

15. The Representations induced Plaintiff to extend the Loan to Defendant.

<u>Defendant's Representations Were Knowingly False</u>

16. Courts may infer a debtor's lack of intent to repay from objective factors. *In re Eashai,* 87 F.3d 1082 (9th Cir. 1996); *see also In re Dougherty*, 84 B.R. 653, 656 (9th Cir. BAP 1988); *In re Hostetter*, 320 B.R. 674, 685 (Bankr. N.D.Ind. 2005); *In re Green*, 286 B.R. 173, 180 (Bankr. C.D.Ill. 2003); *In re Canovas*, 237 B.R. 428 (Bankr. N.D.Ill. 1998); *In re Nahas*, 181 B.R. 930, 934 (Bankr. S.D.Ind. 1994). These factors include but are not limited to:

    a. The length of time between the charges made and the filing of bankruptcy;

    b. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

    c. The number of charges made;

    d. The amount of the charges;

    e. The financial condition of the debtor at the time the charges are made;

  f.  Whether the charges were above the credit limit of the account;

  g.  Whether the debtor made multiple charges on the same day;

  h.  Whether or not the debtor was employed;

  i.  The debtor's prospects for employment;

  j.  Financial sophistication of the debtor;

  k.  Whether there was a sudden change in the debtor's buying habits; and

  l.  Whether the purchases were made for luxuries or necessities

  17.  The objective factors in this case support the inference that Defendant did not intend to repay the Loan: a) Defendant obtained the Loan only thirteen (13) days before the Petition Date and had a lot of other unsecured debt at the time he obtained the loan; b) Defendant received her Certificate of Credit Counseling the one day before she filed her bankruptcy petition; c) Defendant made one payment on the Loan before the Petition Date; d) Defendant's monthly net income was negative $604.67 and the case was filed extremely close in time to the application of the loan which would cause repayment of the Loan to be impossible; e) Defendant owed $69,320.00 in unsecured debt, $10,928.00 in secured debt and $0.00 in tax debt at the time she entered into the Loan, which are not reflected in the Defendant's monthly net income; f) Defendant did not expect her monthly income to increase in the year after he filed for bankruptcy making it more difficult to pay back the loan at the time he obtained it; g) Defendant did not suffer any losses one year prior to filing for bankruptcy; and h) and j) Defendant was employed as a Dealer at the time of filing, and thus was financially sophisticated, when he filed for bankruptcy.

  18.  The facts alleged in paragraph 18 compel the inferences that Defendant knew that her Representations were false and that she made the Representations to deceive the Plaintiff.

Plaintiff Justifiably Relied On The Representations.

19. Upon information and belief, Defendant was insolvent at the time of the Loan.

20. Plaintiff had no notice before the Petition Date that Defendant was insolvent.

21. Indeed, Plaintiff had no notice of the true nature of Defendant's financial condition.

22. Plaintiff justifiably relied on the Defendant's Representations.

Plaintiff Was Damaged

23. Plaintiff has incurred damages including interest and fees up to the time of filing in the amount of $789.45 by extending the Loan to the Defendant in reliance upon the Representations.

24. Defendant obtained the Loan from Plaintiff through false pretenses, false representations and actual fraud.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for entry of an order:

1. Declaring that the amount of $789.45 is not dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code;

2. Awarding Plaintiff a monetary judgment in the amount of $ 789.45 with interest and for attorney fees and court costs associated with the filing of the Complaint; and

3. Providing for such other relief as justice may require.

DATED: July 13, 2015

                                            Schelble Law Firm, S.C.
                                            Attorneys for Plaintiff

                                            **/s/ Jeffrey Schelble**
                                            Jeffrey Schelble
                                            Member ID: 1014739
                                            622 N. Water Street, Ste. 400
                                            Milwaukee, WI 53202
                                            Phone: (414) 270-1930
                                            jschelble@schelblelawfirm.com

# EXHIBIT "1"

# INSTALLMENT NOTE AND DISCLOSURE STATEMENT

**AMERICASH LOANS**

**LENDER** SHORT TERM FINANCIAL, L.L.C.
DBA AMERICASH LOANS
5817 W CAPITAL DR
MILWAUKEE, WI 53216
Ph. (414)873-2721 ~ Fax (414)873-2733

**NAME AND ADDRESS OF BORROWER**
KENYATTA TYLER
2808 N. 57TH STREET
MILWAUKEE, WI 53210

**SOCIAL SECURITY** ***-**-3004

**LOAN NUMBER**
3219

**DATE OF THIS NOTE**
03/26/2015

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 398.0027 % | $2,546.65 | $800.00 | $3,346.65 |

**PAYMENT SCHEDULE:**  N° of Payments: 27   Amount of Payments: $ 123.95   Payments are Due Beginning: 04/10/2015   bi-weekly
Last Payment (Maturity) is Due: 04/08/2016

**PREPAYMENT:** You may pay your loan early without any prepayment penalty. The amount due on prepayment will vary depending upon the unpaid principal balance at the time of prepayment.
**SECURITY:** Your Electronic Fund Transfer Authorization is security for this loan.
*See the note terms below for additional information regarding default, prepayment, and the computation method for amount due on prepayment.*

**Itemization of Amount Financed of:** $800.00
**Amount given to you directly:** $800.00
**Amount paid on your account:** $0.00

**Amount paid to others on your behalf: N/A**
To: N/A
To: N/A

## INSTALLMENT NOTE

**FOR VALUE RECEIVED**, the undersigned ('Borrower' and sometimes 'you') promises to pay to the order of AmeriCash Loans ('Lender' and sometimes 'we' or 'us') at 5817 W Capital Dr, Milwaukee, WI 53216, or at such other place as AmeriCash Loans may designate, the principal sum of $800.00 plus interest payable in 27 consecutive bi-weekly installments of $123.95 each (including principal and interest), beginning 04/10/2015, with interest at a rate of 398.0027 % per annum payable on the principal balance remaining from time to time unpaid. It is the Borrower's responsibility to either bring in or mail a payment in time for it to be received and processed prior to the payment due date. A payment may be made in cash, or by money order, or check, but a check must clear prior to the due date to be considered on time. There is no grace period for late payments. A schedule of the amount of payments and their due dates is attached and hereby made part of this agreement. All payments received on this Note shall be applied first to the payment of interest accrued to the date the payment is made and any amount remaining after application to interest shall be applied to the reduction of unpaid principal. Interest after maturity, whether by reason of acceleration, default, or otherwise, shall be due and paid at the rate of 398.0027 % per annum until all principal is paid. Interest on this Note will be computed based upon a 365 day year for the actual number of days elapsed. Payment amounts may be rounded up to the nearest dollar to accommodate your employer or bank's request. Any payment in excess that may occur at the end of the loan shall first be applied to any unpaid collection balances or fees before any refund is issued. Once the refund has been confirmed for release, it will be issued to you, unless that refund is less than $1.00.

**DEFAULT AND ACCELERATION PROVISION:** A borrower shall be in default under this agreement if the borrower has outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the scheduled or deferred due dates, or fails to pay the first or last payment within 40 days of the scheduled or deferred due dates, or if the borrower fails to comply with any of the terms of this agreement and the failure materially impairs the borrower's ability to pay their obligation due under this agreement. In the event of default and, if you have the right to cure the default pursuant to sec. 425.105, Wis, Stats., you fail to cure the default within 15 days after you are given notice of the default, the lender may declare the whole outstanding balance due under this agreement payable at once and proceed to collect it, including commencing legal action. If we obtain a judgment against you for default under this agreement, we may request an award of statutory costs and statutory attorney fees pursuant to section 814.04, Wis. Stats. If our request is granted, you will be required to pay these fees in addition to any judgment granted.

**PREPAYMENT:** Borrower may make a full prepayment or a partial prepayment at any time without paying any penalty. If Borrower makes a partial prepayment, there will be no delays in the due dates of the scheduled payments, and no change to the amount of scheduled payments (except for the amount of the final payment), unless we agree in writing to those delays or changes. We will charge accrued interest through the date of prepayment. The amount required for prepayment will vary depending on the principal amount prepaid and the date of prepayment. If you prepay your loan, interest will not accrue on the principal amount prepaid after the date of prepayment. Please contact us for the correct pay-off balance at any point you wish to pay your loan off early. Any payment in excess that may occur at the end of the loan shall first be applied to any unpaid collection balances or fees before any refund is issued. Once the refund has been confirmed for release, it will be issued to you, unless that refund is less than $1.00.

**OTHER TERMS:** Borrower, for and on behalf of Borrower and each and every guarantor, endorser and other person or entity from time to time liable for the payment of this Note, (a) consents to deferment and extension of time of payment of this Note without notice and (b) waives presentment, demand for payment, protest, notice of dishonor in connection with the delivery, acceptance, or enforcement of this Note. The construction, validity and enforcement of this Note and any application documents signed in connection with this agreement shall be governed by the laws of the State of Wisconsin. Borrower agrees that the Disclosure statements accompanying this agreement are herein incorporated by reference.

### DISHONORED PAYMENT FEE
If your bank dishonors your check and it is returned to us unpaid because of one of the following circumstances: (a) you do not have an account with the drawee, (b) you do not have sufficient funds in your account, or (c) you do not have sufficient credit with the drawee, you agree to pay us a dishonored check fee in amount equal to $15.00 pursuant to Regulation E and sect. 422.202(1)(d) Wis. Statutes. In the event that you have granted an electronic fund transfer authorization, you further grant us the right to debit your account for any insufficient funds fees incurred.

### ARBITRATION PROVISION DISCLOSURE
By signing this Agreement, you agree that if a dispute of any kind arises out of this Agreement or your application therefore or any instrument relating thereto, the parties hereby agree to have that dispute resolved by binding arbitration as set forth in in this Agreement. It is acknowleged and agreed that this arbitration is intended to keep both parties' costs down in the event of a

disagreement, and is a material inducement to the parties to enter into this Agreement. Arbitration shall be conducted by the American Arbitration Association (the "AAA") pursuant to the AAA's Consumer Arbitration Rules, or any successor organization. If you have any questions concerning the AAA or if you wish to obtain a copy of the AAA's Consumer Arbitration Rules, you may call (800) 778-7879 or visit *http://www.adr.org.*

Any claim, dispute, or controversy (whether in contract, tort, or otherwise, whether pre-existing, or future, and including statutory, common law, international tort, and equitable claims) arising from or relating to this Agreement or application for this transaction or advertisements, promotions, or oral or written statements relating to this Agreement or the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third-parties who are not signatories to this Agreement or this Arbitration Provision) the entire Agreement (collectively "Claim"), shall be resolved, by binding arbitration pursuant to this Arbitration Provision and the Consumer Arbitration Rules in effect at the time the Claim is filed. If for any reason the AAA is unable or unwilling or ceases to serve as arbitration administrator, an equivalent national arbitration organization utilizing a similar code of procedure will be substituted by mutual agreement.

**Small Claims Court Exception** You and we may ask a small claims court to decide a Claim that meets the requirements of the Small Claims Court, so long as no party to the small claims court lawsuit seeks to recover damages beyond the jurisdiction of the small claims court. If you file a small claims court lawsuit against us, then we lose the right to elect arbitration of your Claim (but not of other persons' Claims). However, if we file a small claims court lawsuit against you, then you retain the right to elect arbitration of our Claim.

**Right to Reject Arbitration** **If you wish not to arbitrate all Claims as provided in this Arbitration Provision, then you have the right to reject this Arbitration Provision. To reject arbitration, you must deliver written notice to us at the following address within thirty (30) days following the date of this Installment Note to attention: Arbitration Claims, AmeriCash Loans, 880 Lee Street Suite 302, Des Plaines, Illinois 60016. No one may reject the Arbitration Provision on your behalf. This is the only way you can reject the Arbitration Provision. Rejection of the Arbitration Provision will not affect your right to credit, how much credit you receive, or any contract term other than the Arbitration Provision.**

Any participatory arbitration hearing that you attend will take place in the county of your residence. At your written request, we will pay to the arbitration firm any fees or advance administrative expenses that the arbitration firm requires you to pay as a condition to your filing a Claim with the firm. Additionally, we will pay any fees or expenses the arbitration firm charges for administering the arbitration proceeding, any fees or expenses the individual arbitrator or arbitrators charge for attending the arbitration hearing, and any fees a court charges you to file a lawsuit appealing the arbitration decision. The arbitrator will decide whether we or you will ultimately be responsible for paying any fees in connection with the arbitration. Unless inconsistent with applicable law, each party shall bear the expense of their respective attorney's, expert's and witness fees, regardless of which party prevails in the arbitration. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1-16. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized by law. Any court of jurisdiction may enforce this Arbitration Provision, and judgment upon the award rendered by the arbitrator may

be entered into such court. This Arbitration Provision shall survive satisfaction of your contractual obligations and termination of this Agreement.

## CUSTOMER'S REPRESENTATIONS AND WARRANTIES

By signing this Agreement, you hereby represent and warrant, and acknowledge our reliance thereon, that all information contained in your application documents and contained in this Agreement is true and correct. You further represent and warrant that you are not a debtor under any proceeding in bankruptcy, insolvency, or reorganization and that you have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code on or before the Payment Due Date. You have read this agreement in full, are aware of your obligations hereunder, and have had the opportunity to ask questions about any provision you did not understand.

### Authorization to Verify Information

By signing this Agreement, you hereby authorize us and our agents to verify the information contained in your credit application or contained in this Agreement through any source, including our accessing your bank account information to verify whether funds are available to pay your check, our obtaining your credit report, and our obtaining your check-writing history from any consumer information database.

### Bankruptcy

You are not currently a party to a bankruptcy action, you have not filed nor had filed on your behalf a bankruptcy action within the past 90 days, and you do not currently plan to file or have filed on your behalf a bankruptcy action with the next 90 days.

## NOTICE TO WISCONSIN CUSTOMERS:

(A) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, EVEN IF ADVISED OTHERWISE.
(B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(D) YOU HAVE A RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.
(E) YOU ARE NOT REQUIRED TO AUTHORIZE ELECTRONIC FUNDS TRANSFERS IN ORDER TO BE ELIGIBLE FOR THIS LOAN.
(F) YOU CAN, AT ANY TIME, REVOKE THE AUTHORIZATION FOR ELECTRONIC FUND TRANSFERS.

**YOU HAVE A COPY OF THIS DISCLOSURE STATEMENT. YOU HAVE ALSO RECEIVED COPIES OF THE LOAN DOCUMENTS BEFORE SIGNING ANY OF THEM.**

ACCEPTED AND AGREED:

_[signature]_      _28 Mar 15_     _[signature]_
KENYATTA TYLER     Date     Customer Service Representative

Page 4 of 4     ** FILE COPY - COPY NOT NEGOTIABLE **     Form WCLA - CB, Rev. 06/19/2012

Case 15-02328-svk   Doc 1   Filed 07/13/15   Page 11 of 11